IN THE UNITED STATES DISTRICT COURT
For The Western District of Tennessee
Western Division

RECEIVED
19 JUN 18 PM 1:42

THOMAS M. GOULD
CLERK U.S. DISTRICT COURT
W/D OF TN MEMPHIS

**Ronnie Bradfield**[1]
   Plaintiff-*pro se*,

Vs:       Case: _____

**Jury Demand**

**Memphis Area Transit Authorities,**
Gary Rosenfeld (Present CEO)
Jane Doe (Bus Driver for M.A.T.A.)
M.A.T.A. Employee(s) John/Jane Does 1, 2, 3, 3, 4, 5, 6 and 7
   Defendant(s) et. al..

---

**This is a Civil Action For Monetary Relief Against "all" Defendant(s) Herein Pursuant To Violation Of Plaintiff's American With Disabilities Act § 42 U.S.C. § 12101, *et seq.*; Tennessee's §28-3-104. et. Seq., But not Limited to these Only, Bringing This Action Under Both Federal and State Statues For Monetary Relief:**

---

May it please this honorable Court:

### Jurisdiction:

I. This Honorable Court has Jurisdiction over the Plaintiff's Claims of federal constitutional right under *42 U.S.C. §§ 1331(1)* and *1343*.

II. The Court has supplemental Jurisdiction over Plaintiff's State law tort claims under *28 U.S.C. § 1367*.

---

[1] Pro se complaints are to be liberally construed. See: *Haines v. Kerner*, 404 519, 520-21 (1972) accord: *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Erickerson v. Pardus*, 551 U.S. 89, 94 (2007)

## Parties:

### Plaintiff:

Plaintiff: **Ronnie Bradfield**, was the MATA Passenger that was injured as a result of Defendants' actions and/or inaction. Plaintiff, is an honorable discharged Vietnam Wartime veteran, who is a paraplegic as well unable to speak, and have to have to use a "*whiteboard*" and etc. to communicate and a wheelchair to ambulate.

### Defendants.

**Gary Rosenfeld** **(Present CEO)**: Rosenfeld is responsible for ensuring that "all" state and federal regulations are followed, as well the appropriate safety measures are enforced to ensure accidents/injuries that the Plaintiff endured, or foreseen and appropriate action(s) are implemented *via* him and/or his subordinates to safeguards **MATA** riders, especially those with disabilities.

**Jane Doe:** (*Bus Driver/operator for M.A.T.A.*) **Jane Doe**: Is the Bus driver/operator that failed to safeguard the plaintiff's safety, failed to perform her required and mandatory duties; as well once the accident/injuries occurred; failed to even call an ambulance or provide medical care to plaintiff, *but not limited to these "only"* as her liabilities in this action herein. (***Her name will be supplemented into this action once same is learned by your Plaintiff***).

**M.A.T.A. Employee(s) John/Jane Does 1, 2, 3, 3, 4, 5, 6 and 7:** These are employee(s) That are subordinates to the Defendant **Gary Rosenfeld** and are responsible for the safety for the MATAPlus rider(s) and Plaintiff, to ensure federal and state guidelines are followed, but not limited to these liabilities only.

## Claim #1

**1.** Plaintiff, **_Ronnie Bradfield_** (herein afterward the "Plaintiff") who is defined via the Americans With Disabilities" a paraplegic and person unable to speak as a disabled person within the meaning of the federal ADA statute.[2]

---

[2] **Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.**

**_Statutes, Regulations, and Agency Guidelines_**: Passed by Congress in 1990, the Americans with Disabilities Act (ADA) was intended to ensure that people living with disabilities have access to all of the same opportunities as those without disabilities. The ADA extended coverage provided by the Rehabilitation Act of 1973 to employees and participants in federal agencies and federally-funded programs by applying its requirements to the private sector as well as to state entities. The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." As a result of the ADA being enacted, thousands of people have benefited not only from its prohibitions on discrimination in employment, transportation, and public accommodations, but also from its requirements that facilities and public spaces be made more accessible to people with physical disabilities. In 1998, the U.S. Supreme Court issued its first decision addressing the ADA as it relates to HIV infection as a disability (see _Bragdon v. Abbott_, 524 U.S. 624 (1998)). Since then, the Court has interpreted the language of the ADA in ways that have severely limited its scope of coverage (see _Sutton v. United Airlines_, 527 U.S. 471 (1999) and _Toyota Motor Manufacturing v. Williams_, 534 U.S. 184 (2002)). In response, Congress passed the ADA Amendments Act, which will reinstate some of the original intent of the ADA and specifically reject the Supreme Court's reasoning in Sutton and Toyota, while seeking to reaffirm the court's reasoning in _School Board of Nassau County v. Arline_ (480 U.S. 273 (1987)), **which broadly interpreted the definition of disability in the Rehabilitation Act of 1973**

That on or about the 17th, July 2018, as a passenger upon a returning trip back to his pick-up designation, *as well this was his first day ever riding as a passenger aboard a MataPlus bus*.

**2.** That upon his pick-up (*returning designation*) the driver appeared to be in an extreme rush; and although she (driver/operator) pull up to the curb/sidewalk there was still about and eight inches gap. As well she (driver/operator) failed to even lower the mechanical handicap ramp for wheelchairs to be able to board the bus. She (driver/operator) asked whether the Plaintiff could get on board the bus (this was asked as stated above without the handicap ramp lowered and/or extended for assess. Plaintiff looked at (driver/operator) with amazement as to what is going on. (driver/operator) finally realized that the bus was not close to the curb/sidewalk, as well ramp was not lowered and/or extended for assess for a wheelchair. (as well it appeared (driver/operator) wanted Plaintiff to come abroad bus without this (driver/operator) getting out-of-her seat.

**3.** Eventually, (driver/operator) realized handicap ramp was not lowered/extended and she was too far away from the curb/sidewalk.

**4.** That it appeared driver was in a great rush (driver/operator) moved bus closer to the curb/sidewalk, and then lowered the ramp; and leaving the bus seat, to assist the Plaintiff unto this bus.

**5.** She (driver/operator) hurriedly strapped Plaintiff's wheelchair with straps; took his fare ($3.50); got into her (driver/operator) seat and began to return Plaintiff to his return designation.

**6.** That upon his arrival designation, the driver/operator unbuckled the Plaintiff and asked him how was his day (*unable to speak*) Plaintiff gave her the (thumbs-up sign) as this is universal for everything is either okay, good or I'm doing good… She (driver/operator) told Plaintiff that he could go ahead and leave. Plaintiff took this as an **ORDER** from (driver/operator) as this was his first day riding using MATAPlus bus services [**Id#1**].

**7.** The Driver/operator failed to recognized an unsafe and hazard environment for her disable passenger, as well spoke to Plaintiff in a manner that any person would receive as an **ORDER** to exit their bus… which Plaintiff felt he was compel to do.

**8.** Plaintiff upon descending this so-called wheelchair ramp, began to slide forward, and he quickly applied his brakes; only to learned he was still sliding forward.[3]

Plaintiff further contends that the surface of the so-called wheelchair ramp was slippery; and without anything for a wheelchair tire to grip upon.

**9.** Plaintiff slide forward, evidently falling sideways off the ramp (there were no rails for Plaintiff to grab and/or keep him from falling sideways.

**10.** Plaintiff wheelchair was on top of him; pinning him under his wheelchair. The driver/operator continued to just look upon this incident without "any" assistant to your disable Plaintiff.

A neighbor across the street seen the incident, ran to Plaintiff aide, and was trying to assist Plaintiff. The neighbor shouted at the driver/operator ("… ain't you going to

---

3  Plaintiff contents that there was enough time for the driver/operator to grab/stop the Plaintiff's wheelchair from moving forward, but did nothing but look on.

help me help this man...) the driver/operator then assisted in getting the disable Plaintiff from being pinned under his wheelchair.

**11.** The driver/operator told the Plaintiff and his family member(s) that someone will contact him. One of the family members asked ("... or you going to call an ambulance?) Driver/operator stated that someone will call him as soon as she gets back to the bus terminal.

**12.** That after approximately two (2) days Plaintiff went to the emergency room, received medical care, and was referred to his primary health doctor. He was given pain medication, and he went to his primary doctor who **ORDERED** additional test, and more pain medication, as well Plaintiff is still under medical care from specialist and/or other health professionals.

### Claim #2

13. Plaintiff has suffered permanent damage to his eye, his head, wrist (*which effect his ability to ambulate properly in his wheelchair*); constant vertigo, daily pain as well emotional stress associate with this incident, *but not limited to these only*.

### Claim#3

14. That if not for lack of training; failing to following proper protocol, transporting a disable passenger in a vehicle that doesn't have proper handicap assess[4], failing to avoid a serious/dangerous event to its disabled passenger; failing to assist a disable passenger once an accident had occurred; failing to properly provide medical care; as well

---

4 **The Americans with disabilities Act (ADA) provides businesses that are public/commercial transportation vehicles; handicap wheelchair ramp(s), and other accessibility specification codes and guidelines are required to meet** (*see also: 36 CFR 1192*)

misleading the disable passenger to wait upon a call from MATAPlus to care for his injuries, as well MATAPlus failing to take appropriate action once learned that an accident had occurred upon one of its buses.

## RELIEF SOUGHT:

### Award the amounts:

15. $150.000.00 (One hundred and fifty thousand dollars) jointly and severally for compensatory damages and relief against each defendant.

16. $150.000.00 (One hundred and fifty thousand dollars) jointly and severally for punitive damages and relief against each defendant.

17. $150.000.00 (One hundred and fifty thousand dollars) jointly and severally for emotional damages and relief against each defendant.

18. **GRANT** such relief as it may appear that your disable Plaintiff is entitled, as well;

a. that Defendant(s) are served with process of service;

b. *allowed to amend/supplement complaint as needed and/or required*.

### Declaration of Pro se Plaintiff under 28 U.S.C. §1746

That I declare under the penalty of perjury, all the foregoing is true and correct to the best of my belief, person knowledge. *28 U.S.C. §1746*

Signed: _____   This 10th day, June, 2019

Respectfully submitted

Ronnie Bradfield-*pro se*
[email] rbb.vet@outlook.com
3429 Woodhollow Drive
Memphis, Tennessee 38118